Raymundo Pacello, Jr., Esq. SBN207694
Tien Xuan Cao, Esq.        SBN220045
**LEGAL BALLER℠ LAW PARTNERS, RLLP**
 INGERSOLL-TUTTON HISTORIC BUILDING
832 Fifth Avenue, Suites 2, 3, 4, & 5
San Diego, CA 92101
Ph: (619) 531-8831 | Fax: (619) 374-2975
Website: www.legalballer.com | Email: lb@legalballer.com

Attorneys for Plaintiff, MATTHEW ANDERSON, Jr.

# UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| MATTHEW ANDERSON, Jr., and all those similarly situated.<br><br>Plaintiff,<br><br>v.<br><br>Kimball, Tirey & St. John, LLP,<br><br>Christine Relph, Esq., and<br><br>DOES 1 through 100, Inclusive,<br><br>Defendants. | CASE NO. 3:13-CV-253-JM(NLS)<br><br>**PLAINTIFF'S *SECOND AMENDED* COMPLAINT FOR CLASS ACTION *as and for the following:***<br><br>**(1) VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT,**<br><br>**(2) VIOLATION OF THE ROSENTHAL DEBT COLLECTION PRACTICES ACT,**<br><br>**(3) VIOLATION OF BUSINESS & PROFESSIONS CODE 17200,**<br><br>**(4) MISREPRESENTATION & FRAUD for PUNITIVE DAMAGES;**<br><br>**A DEMAND FOR JURY TRIAL** |

TO THIS HONORABLE COURT AND ALL PARTIES INTERESTED HEREIN:

COMES NOW Plaintiff, MATTHEW ANDERSON, Jr., by and through

1

his attorneys of record, the LEGAL BALLER℠ LAW PARTNERS, RLLP,

pursuant to his Honor's recent Order, hark back to the days of yore with a preface

to this Second Amended Complaint hoc modo:

## I.

## **PROEMIUM**

In the aftermath of what was dubbed the "*Great Recession*", millions of

homeowners in our beloved country have faced the emotional turmoil associated

with what is now commonplace, the reality of FORECLOSURE and close

relative EVICTION.   Our government bailed out the financial institutions that

underwrote the "*toxic loans*" that crippled the global economy and the Federal

Treasury stepped in to "*save it from collapsing*."   Consequently to the cost of

Americans, the function of the law appears to have been creatively side-stepped

to achieve a solution to a massive money problem.

Counsel humbly extends his proverbial olive branch to this Honorable Court

for "*jumping the gun*" as it were, in his Amended Complaint by capitalizing on

what appeared to have been a robo-signed document given the cursorily curious

misspelling of plaintiff's name.   Upon review, regrouping, and investigative

diligence counsel believes this time we colloquially "*got it right*". To that extent,

we graciously and professionally thank this Honorable Court for giving us

another opportunity to articulate that which may be subliminally known, but what

LEGAL BALLER℠
LAW PARTNERS, RLLP

has yet to be lucidly articulated via the medium of law. In this forum; designed for Americans to seek redress of their legal grievances, we endeavor to do so via this very Complaint.

Without further ado, MATTHEW ANDERSON, Jr., individually, and on behalf of all of those persons similarly situated is informed, believes and thereon alleges the following against defendants seriatim:

## II.

## **LEGAL FOUNDATION**

A. This is an action brought under the FAIR DEBT COLLECTION

PRACTICES ACT (FDCPA) 15 U.S.C. §§ 1692k et seq. and seeks,

statutory damages, actual damages, punitive damages and Attorney's fees.

Therefore, this Honorable Court has proper jurisdiction to hear Federal

Question matters.

B. Justice Sonia Sotomayer of the United States Supreme Court delivered an

opinion in Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA, et al.

U.S. LEXIS 3480 (S. Ct. 2010) holding that " The bona fide error defense

in §1692k(c) does not apply to a violation resulting from a debt collector's

mistaken interpretation of the legal requirements of the FDCPA".

C. Thereafter, in a seminal decision by the Ninth Circuit Court of Appeal via

In Re Veal (2011 9th Cir.), the Court reversed the District Court's grant of

3

relief from the stay to Wells Fargo (the foreclosing entity herein) because,

inter alia, it could <u>not show that it was the holder of the note in question</u>

<u>such that it was entitled to enforce it</u>; i.e., it had NO standing to sue

because it could not qualify as the "real party in interest."

D. The Sixth Circuit Court of Appeals in <u>Wallace v. Washington Mutual, et al.</u>

Case No. 10-3694, (6th Cir. 2012)  extolled that incorrectly identifying the

'actual holder of the note," i.e., alleged creditor, is materially misleading

under the Fair Debt Collection Practices Act.

E. In the case at Bar and all others so similarly situated, the foregoing legal

authority and the facts herein below alleged provide the poignant predicate

for this lawsuit.

## III.

## <u>LITIGATION PARTIES</u>

1.    Plaintiff MATTHEW ANDERSON, Jr. hereby is informed, believes and

thereon alleges that on or about March 27, 2007 he encumbered the real property

located at 4001 Shadow Rock Court, Bonita CA 91902-3039 through an

"ADJUSTABLE RATE MORTGAGE NOTE-PICK-A-PAYMENT LOAN" in

the amount of $450,000.00 from WORLD SAVINGS BANK, FSB, a Federal

Savings Bank: **Loan No. 0045697992**.  Attached hereto as **EXHIBIT 1,** is a true

and correct copy of the same along with the confirmatory supplements entitled

4

"Verification of Personal and Loan Information". This confirms the first monthly payment of $1,553.05 due on May 15, 2007, and the "Document Set Cover Sheet" containing an internal DOCUMENT FILE NUMBER **0045697992***0703227140806*-the underlined portion of which supplements the loan number hereinabove identified.

2.   Plaintiff MATTHEW ANDERSON, Jr. also is hereby informed, believes and thereon alleges that the DEED OF TRUST securing the note herein above alleged was recorded in the County of San Diego by OLD REPUBLIC TITLE COMPANY, which references and confirms the loan amount of $450,000.00 and corresponding loan number 0045697992 as referenced in *EXHIBIT 1* thereby creating a "Security Instrument" in said real property by MATTHEW ANDERSON, Jr. inuring to the benefit of WORLD SAVINGS BANK, FSB, et al.   Attached hereto as **EXHIBIT 2,** is a true and correct copy of said DEED OF TRUST bearing the sequential bate-stamped numbers 33369 through and including 33386.

3.   Moreover, Plaintiff MATTHEW ANDERSON, Jr. is a unique individual residing in San Diego, California with a family footprint on this country that is worthy of expatiation for the Court.   *To wit*: A graduate of the University of Illinois in Political Science, MATTHEW ANDERSON, Jr., is also an alumnus of San Diego State University where he was a student activist, football player, track

athlete and a member of Alpha Phi Omega, a national service fraternity. Mr. ANDERSON's academic study was interrupted in 1969 when he was selected to be 3M Company's first African-American Sales engineer in the new Computer Products Division. His first territory was that area today known as "Silicon Valley" and Mr. ANDERSON lived in Santa Clara, California while doubling his sales territory in a single year. At the suggestion of a Trial Judge in San Diego, Mr. ANDERSON would travel to Berkeley, California where he would informally study law. After graduation from University, MATTHEW would be offered a scholarship to the University of New Mexico in the graduate writing program there. He instead chose to pursue his doctoral degree at Northwestern University in Evanston, Illinois. MATTHEW would later transfer from the thirteenth most renowned Political Science Department to doctoral work at the Massachusetts Institute of Technology (MIT) then acknowledged as the number one department of its kind in the world. His doctoral work is all but dissertation as he chose to interrupt study to work with Dr. Daniel Lerner, the East-West Communications Center in Hawaii and UNESCO and the US Department of Transportation on several projects. The UNESCO project was the first of its kind to chronicle satellite information for libraries and their founding worldwide.

4.   While at MIT, he also worked with Shari Al Balthasar on efforts to combine the "hard" science elements of Mechanical Engineering with Political Dynamics.

6

LEGAL BALLER™
LAW PARTNERS, RLLP

At that time, Shari was also a political consultant to his uncle, the Shaw of Iran. MATTHEW's work consulting Abigail Rockefeller relative to a fledgling project concerning Swedish "Multrums" (*waterless toilets*) and their potential placement in developing nations was aided by his Communications and African Politics backgrounds. Mr. ANDERSON also served as Vice President of the MIT Club in San Diego recruiting students for matriculation at that institution.

5.     More recently, Mr. ANDERSON has served as consultant to Christopher Reeves concerning his acknowledgment by the University of California for his stem cell research. He also doubled as bodyguard for Christopher's wife, Dana and son William during their stays in San Diego. Mr. ANDERSON has taught all grades, K-12 plus college courses at MIT, Northwestern University and San Diego State University. He has also taught at the University of California, San Diego where he also broadcast a radio program there for several years. He has also volunteered time on that campus to teach children's martial arts for fifteen years and aerobics for eight years.

6.   MATTHEW's pedigree is also strong. His mother Katye, valedictorian of the largest Black High School in the world at that time, brought First Lady, Eleanor Roosevelt to that campus where both were serenaded by first tenor Matthew Anderson Sr., Katye's husband "to be". Mrs. Anderson would go on to become the only woman to have received acknowledgment from the United Nations,

LEGAL BALLER®
LAW PARTNERS, RLLP

France, Germany and the Netherlands for her work with children worldwide. She was also an original member of Lyndon Johnson's National Teacher's Corps. Her Husband, Matthew Anderson Sr. would become one of the members of the team that saw Chuck Yeager break the "sound barrier" in 1947. Matthew Anderson Sr., would later, in 1951, become the only African-American on the eleven person team to introduce the first working electronic computing device (the computer) to the world in Minneapolis/St. Paul. Both of MATTHEW's parents have been nominated to President Obama's Administration for the President's Medal of Freedom Award.

7.    MATTHEW ANDERSON, Jr. is a musician and a writer whose most recent credits include several contributions to the Huffington Post, Yahoo, and several books being prepared for publication. His "Anatomy of a Foreclosure" series is a novel "cross publication" between Yahoo and Huffington post that investigates the nuts-and-bolts of foreclosure and how it currently impacts individuals. He has interviewed several notables on air and bemoans having missed an interview with Hillary Clinton by an hour that was lost from her schedule. Also, a former conversation he had with President John F. Kennedy will be highlighted in a coming publication.

8.    MATTHEW ANDERSON, Jr. was in the process of creating a unique situation whereby he would provide quarters for children through an attempt to

LEGAL BALLER*
LAW PARTNERS, RLLP

create an international children's library.  His Bonita residence, to be used for that purpose, was also scheduled to be used to help house the parents and children of 11 Q sufferers.  Lori Sturtz (*MATTHEW's deceased partner*), along with Dr. Paul Grosfeld of the University of California, San Diego, had created the 11 Q Conference on the heels of Dr. Kenneth Chen's creation of the new Department of Molecular Medicine on campus in 2001.  After meetings with officials of INSERM in Paris, it was determined that there might be a place for the acknowledgment of this bevy of children, roughly 200 in all, that contracted not one or two, but eight diseases as part of the newly discovered 11 Q compendium of diseases. These notables had all worked together to bring light to these issues and Mr. ANDERSON had created a context where his home would have eventually become a respite for one or two families a week while being diagnosed each year in San Diego.  These hopes have all but been devastated when Wells Fargo foreclosed on his family's home, and as a result, MATTHEW's belongings (to include much of his family's historical documents) were sold at auction after Wells Fargo Bank had moved those belongings from his home.

9.    Plaintiff MATTHEW ANDERSON, Jr. thoroughly is informs, believes and thereon alleges that he has legal standing to contest that which has occurred because he was the holder/obligor under.

LEGAL BALLER®
LAW PARTNERS, RLLP

10.     To add insult to injury, status post foreclosure, the law-firm [defendant(s) herein] were retained by an investor who purchased the Anderson's family home and "evicted" MATTHEW forthwith; secondary to the less than lawful debt collection practices herein alleged against all parties-presently known and unknown.

11.     Consequently, and most tragically, Mr. ANDERSON has been forced to live in his vehicle; a devastating reality that he must endure every single day of his life all in the face of his accomplishments and familial contributions to our great nation.

12.     MATTHEW ANDERSON, Jr. still serves as an officer with the San Diego Foreclosure Strategist Group in San Diego and seeks "Class Certification" as the lead member of all those persons similarly situated; based on the enumerable predicate legal factors justifying the same.

13.     Defendants Kimball, Tirey & St. John, LLP is a law firm, with a principal place of business in San Diego, California, that holds themselves out as providing "35 years of superior legal representation."    To iterate from their website: www.kts-law.com:

> *"We are a statewide, full-service law firm that has been representing owners*
>
> *and managers of residential and commercial properties for over 35 years*
>
> *in California. Kimball, Tirey & St. John LLP represents many of the top*

10

*property management companies in the state and country, as well as*

*assisting smaller portfolio owners with their legal needs. In addition to*

*providing <u>exemplary eviction and collection services</u>, our firm offers a*

*broad spectrum of services to the real estate community."*

**[Emphasis Added].**

Attached as **EXHIBIT 3**, is a true and correct copy of said defendants' webpage print-outs for the Court's reference, as substantive evidence of allegations heretofore to follow.

14.     CHRISTINE RELPH, Esq. is an associate attorney with the law firm of Kimball, Tirey & St. John, LLP, in San Diego, California.     CHRISTINE RELPH, Esq. has an undergraduate degree from the University of Arizona and Juris Doctorate from the venerable institution here (in San Diego) known as the University of San Diego Law School.   She holds herself as having, inter alia, expertise in the area of practice known as "<u>Post Foreclosure Evictions</u>" and is a represented member of the "<u>California Mortgage Banker Association</u>."   Attached as **EXHIBIT 4**, is a true and correct copy of Attorney RELPH's State Bar Profile. Mdm. RELPH's profile is at <u>www. kts-law.com/attorneys/index.aspx</u>.

## IV.

## <u>JURISDICTION AND VENUE</u>

15.   This Court has jurisdiction under the Federal Fair Debt Collection Practices

11

LEGAL BALLER™
LAW PARTNERS, RLLP

Act ("FDCPA"), 15 U.S.C. § 1692k.  This Honorable Court is also the proper forum under the doctrine of Supplemental Jurisdiction—See 28 U.S.C. § 1367. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 (c). Plaintiffs' action for declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

## V.

## **REQUEST FOR CLASS CERTIFICATION**

16.    This Class Action is being filed by Plaintiff MATTHEW ANDERSON, Jr., pursuant to Federal Rule of Civil Procedure 23 on behalf of himself and others similarly situated as against the defendant law-firm, its associate attorneys including, specifically, defendant CHRISTINE RELPH, Esq. SBN213984 within the meaning of the Fair Debt Collection Practices Act ("FDCPA"), and the Rosenthal Act.

17.    The Law-Firm Defendants are debt collectors within the meaning of the FDCPA and Rosenthal Act.

18.    Plaintiff brings this action on behalf of himself and all other persons similarly situated, as members of a proposed Plaintiff Class. The class that Plaintiff seeks to represent is defined as:

*All persons that have been named defendants in unlawful detainer actions by*

*Defendants, where the plaintiff was a purported "person entitled to enforce the*

*note" as set forth in the seminal case of In Re Veal, when in fact no investigation was conducted into the same to confirm with reasonable legal certainty that said plaintiff had proper standing to foreclosure and thereby evict in the state of California.*

19.   Defendants, as plaintiff's agent, representative and/or attorney is under "imputed knowledge" of the non-traceability of the legal holder of the note(s) used to foreclosure and thereby knew or should have known that each and every purported plaintiff had no legal standing to foreclosure thereby depriving defendants, with the legal right to evict and take possession of the properties because, inter alia, said plaintiff could not show standing.

20.   This action has been brought and may properly be maintained as a class action under Rule 23 of the Federal Rules of Civil procedure.

21.   This Court may maintain these claims as a class action pursuant to Fed. R. Civ. P. 23(b) (1), 23(b) (2), 23(b) (3), and/or 23(c) (4)(A).

22.   Existence of an Identifiable Class - The proposed Class definition is sufficiently definite so that it is administratively feasible for the Court to determine whether a particular individual is a member. Members of the Class may be identified from records maintained by Defendants, various court records and by reviewing the named plaintiffs and defendants in all actions filed by the Defendants.

13

LEGAL BALLER™
LAW PARTNERS, RLLP

23.   Numerosity of the Class - Fed. R. Civ. P. 23(a) (1): The members of all Classes are so numerous that joiner of all members is impracticable.  The precise number of Class members and their addresses are unknown to Plaintiff, but can be obtained from Defendants and from various court records. Class members can be notified of the pendency of this action based on those records, or by any means used by the defendants to notify them of the underlying unlawful detainer suits. The disposition of the claims of the Class members in a single action will provide substantial benefits to all parties and the Court.

24.   Existence of Common Questions of Fact and Law- Fed. R. Civ. P. 23(a)(2): Plaintiff, as a Class Representative, alleges that the questions of law and fact relating to his claims are common to the claims of the Class and the claims predominate over any questions affecting solely individual members,  in satisfaction of rule 23(a)(2). These common legal and factual questions include whether defendant debt collectors; by collecting the loans; foreclosing and filing Unlawful Detainer actions; evicting plaintiff/Class without having an assignment and/or possession of the promissory note without a proper assignment of the trust deed mortgage; using improper documents created by them to foreclose, and when they knew or should have known of the fraudulent scheme involved in securitizations are in violation of the following:

- The Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C.

LEGAL BALLER®
LAW PARTNERS, RLLP

§ 1692et. seq. by engaging in unfair and unlawful debt collection practices.

- The California Civil Code § 1788 - California Rosenthal Fair Debt Collection Practices Act; and/or California Civil Code § 2924h; and/or

- The California Business and professions Code § 17200.

- Whether Plaintiff and Class members have been injured by defendant's conduct;

- Whether Plaintiffs and Class members are entitled to compensatory damages, and the amount of such damages; and

- Whether Plaintiff and Class members are entitled to statutory damages and the amount of such damages.

- Whether Plaintiff and Class members are entitled to legal costs and fees.

25.    Fed. R. Civ. P. 23(a) (3): Plaintiff's claims are typical of the claims of the Class because defendants initiated (a) suit against him without having an assignment of the note and mortgage, creating fraudulent documents to foreclose, and when they knew, or should have known, about the fraudulent recorded documents and scheme of securitization. Furthermore, all members of the Class are similarly affected by defendants' wrongful conduct.

26.    Adequacy, Fed. R. Civ. P. 23(a) (3) (4): Plaintiff is an adequate

representative of the Class because Plaintiffs' interests overlap and are not in conflict with the interests of the Class. Plaintiff has retained counsel competent in complex litigation, and Plaintiff intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

27.    The class may be certified pursuant to Fed. R. Civ. P. 23(b)(1). Class certification is appropriate pursuant to Rule 23(b)(1) because the prosecution of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for Defendants and/or because adjudications respecting individual members of the classes would be a practical matter, be disparities of the interests of the other members or would risk substantially impairing or impending their ability to prosecute their interests.

28.    The class may be certified pursuant to Fed. R. Civ. P. 23(b)(2). Class certification is appropriate pursuant to Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to all members of the class, thereby making final injunctive relief or declaratory relief as a whole appropriate. Plaintiffs and members of the Class have suffered, and will continue to suffer, harm and damages as a result of Defendants' unlawful and wrongful conduct.

29.     The Class may be certified pursuant to Fed. R. Civ. P. 23(b)(3). A Class Action is superior to other available methods for the fair and efficient adjudication of the controversy under Rule 23(b) (3). Absent a Class Action, most members of the Class likely would find the cost of litigating their claims to be prohibitive, and will have no effective remedy at law. The Class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication.

## VI.

## ALLEGATIONS OF FACT APPLICABLE TO ALL CAUSES OF ACTION

30.     Plaintiff MATTHEW ANDERSON, Jr. is further informed, believes and thereon alleges that at some point status post the securing of said "note," the lender known as WORLD SAVINGS BANK, FSB was either taken over or subsumed in some manner (the details of which are unknown to the plaintiff at this time) by an entity known as WACHOVIA BANK, FSB, a branch, subsidiary or other corporate arm entitled **WACHOVIA Mortgage**.  Plaintiff understands and believes and thereon alleges that the "note" referenced as ***EXHIBIT 1 & 2*** herein was assigned to WACHOVIA as part of said transaction thereby making it a part of their mortgage portfolio of assets--*toxic or otherwise.*

31.     Plaintiff MATTHEW ANDERSON, Jr., is additionally informed and

17

believes and thereon alleges that WACHOVIA BANK, FSB via its internal mechanisms of maximizing portfolio assets bundled its mortgage asset loans and/or notes into what is commonly known as "Mortgage Backed Securities" (hereafter MBS), including the original WORLD SAVINGS BANK Loan No. 0045697992 and sold it on the open negotiable paper markets parlayed on our own WALL STREET to investors globally.  The exact dates of the bundling and actual sale are unknown *at this time*. Pleadings based on sound information and good faith, believes its veracity.

32.    Plaintiff MATTHEW ANDERSON, Jr. informed, believes and thereon alleges that during our nation's financial crisis, specifically in the second quarter of 2008, WACHOVIA reported an anticipated whopping loss of $8.9 billion dollars.  Attached please see **EXHIBIT 5,** a true and correct copy of Wikipedia's WACHOVIA printouts detailing the company's beginning, mergers, financial triumphs and devastation, i.e., crash of Washington Mutual and withdrawal of customer deposits, etc.

33.    Plaintiff MATTHEW ANDERSON, Jr. also informed, believes and thereon alleges that consequently, WACHOVIA hired Treasury Undersecretary Bob Steel as its Chief Executive in hopes that he would "save the day" and resurrect the bank from insolvency and ease the drain on the U.S. Treasuries F.D.I.C.'s insurance program.  See *EXHIBIT 5.*

34.    Plaintiff MATTHEW ANDERSON, Jr. further is informed, believes and thereon alleges that as the credit crisis continued to shock the nation and the global economy at large, it became apparent that WACHOVIA was colloquially "*going down*" and imploded the financial market(s). Citigroup, Inc. entered into an exclusivity deal with WACHOVIA for a takeover of all its assets: profitable and toxic on or about September 29, 2008.  Attached hereto as **EXHIBIT 6** is a true and correct copy of the September 29, 2008 exclusivity agreement between WACHOVIA and CITIGROUP, INC. regarding the latter's acquisition of the former.

35.    Plaintiff MATTHEW ANDERSON, Jr. is additionally informed, believes and thereon alleges that while in negotiations, WELLS FARGO "swooped in" and made all stock offer to WACHOVIA for 15.1 billion dollars.  See **EXHIBIT 7,** under "Acquisition by Wells Fargo." And, as the midnight oil would proverbially burn, both companies "unanimously" approved the merger on *October 3, 2008*, regardless of CITIGROUP'S EXCLUSIVITY DEAL.

36.    Attached hereto as **EXHIBIT 8,** is a true and correct copies of the NEW YORK TIMES' ARTICLES from their "BUSINESS SECTION" stating its tremendous $23.9 billion dollar loss for the third quarter and which expands on the breach of the CITIGROUP's contract.

37.    Plaintiff MATTHEW ANDERSON, Jr. is informed, believes and thereon

19

LEGAL BALLER™
LAW PARTNERS, RLLP

alleges that curiously coincidental to the foregoing, a month prior the INTERNAL REVENUE SERVICE issued a notice providing "tax breaks" to companies that acquire troubled banks, which according to experienced tax analysts would be worth "billions to WELLS FARGO," which satirically "may have been a factor in WELLS FARGO's decision to purchase WACHOVIA. See **EXHIBIT 5.**

38.   Plaintiff MATTHEW ANDERSON, Jr. is thoroughly informed and believes and thereon alleges that the merger garnered the blessing of the FEDERAL RESERVE SYSTEM via a publicly issued Order dated October 12, 2008 by Deputy Secretary of the Board Robert deV. Frierson.   Attached hereto as **EXHIBIT 9,** is a true and correct copy of the FEDERAL RESERVE SYSTEM's ORDER APPROVING THE ACQUISITION OF A BANK HOLDING CO.

39.   Plaintiff MATTHEW ANDERSON, Jr., is informed, believes and thereon alleges that one might posit that by (a) said billion dollars in tax breaks, (b) the blessing by the FEDERAL RESERVE SYSTEM and (c) WELLS FARGO's admission that its WACHOVIA unit was involved with *money laundering for drug traffickers* via transfers in and out of "*casas de cambios*" without proper diligence in violation of the Bank Secrecy Act helped the financial giant ease the pain of the credit crisis with Warren Buffet as its significant shareholder. See **EXHIBIT 5.**

40.   Plaintiff MATTHEW ANDERSON, Jr. is thoroughly informed, believes and thereon alleges that in the wake of the midnight "all stock deal" takeover, the traceability of the toxic loans/notes bundled, parlayed and sold as MBS are "non-existent" and that *a fortiori*, leaves "genuine doubt" as to WELLS FARGO's standing as a "person entitled to enforce the note" used as the predicate for plaintiff's MATTHEW ANDERSON, Jr.'s foreclosure in the first instance.   In other words, MATTHEW ANDESON, Jr. is duly informed and believes and thereon alleges that WELLS FARGO could not have met the requisite legal requirement to show that it was entitled to enforce the initial note via WORLD SAVINGS LOAN NO. 0045697992; see ***EXHIBIT 1*** and incorporated by this reference.   Also, please see section: **LEGAL FOUNDATION** (C) - <u>In Re Veal</u> (2011 9th Cir.), where our own 9th Circuit Court <u>reversed</u> the District Court's grant of relief from the stay to Wells Fargo (the foreclosing entity herein) because, inter alia<u>, could not show that it was the holder of the note in question,</u> <u>nor was entitled to enforce it</u>, i.e., it had NO standing to sue., because it could not qualify as the "real party in interest."

41.   Plaintiff MATTHEW ANDERSON, Jr. additionally is informed, believes and thereon alleges that said allegation is supported by the Wells Fargo and Wachovia Merger. The completed Press Release dated January 1, 2009 - a true and correct copy of which is attached hereto as **EXHIBIT 10**, of note, is the

1  resignation of WACHOVIA's stock symbol "WB" as of December 31, 2008.

2  42.    Plaintiff MATTHEW ANDERSON, Jr. is also informed, believes and
3
4  thereon alleges that after the "merger" of WELLS FARGO and WACHOVIA,
5  and contradiction of the terms of the "merger" agreement, WACHOVIA
6
7  MORTGAGE, FSB committed the *ultra vires* act of substituting the original
8  trustee for loan/ note herein identified and incorporated by reference as
9  ***EXHIBIT 2*** to a company "labeled" as NDEX WEST, LLC.  Attached hereto as
10
11  **EXHIBIT 11** is a true and correct copy of the "NOTICE OF DEFAULT AND
12  ELECTION TO SELL UNDER DEED OF TRUST" dated July 22, 2009, **which**
13  **is greater than seven (7) months after** WACHOVIA MORTGAGE, FSB was
14
15  bought out by WELLS FARGO.  Based on the foregoing chronology, plaintiff
16  MATTHEW ANDERSON,  Jr. questions the propriety, legitimacy and legality of
17  the foregoing "substitution of trustee," especially in light of the allegations herein
18
19  below to buttress the same.

20  43.    Plaintiff MATTHEW ANDERSON, Jr. further is informed, believes and
21  thereon alleges that the documented attached hereto and incorporated by this
22
23  reference as bate stamped no. 6343 entitled Declaration of Wachovia Mortgage,
24  FSB purporting to comply with Cal. Civ. Code 2923.5, which is clearly filled out
25  and signed by two different people and contains "**NO NAME**" OF THE
26
27  PURPORTED "**ASSISTANT VICE PRESIDENT**" of WACHOVIA that was

28

LEGAL BALLER®
LAW PARTNERS, RLLP

bought out seven months earlier by WELLS FARGO and whose stock symbol was retired in December of 2008; not to mention the glaring <u>difference in the pen thickness of the pens between the two show the different hands that executing the pen markings thereon.</u>

44.   Plaintiff MATTHEW ANDERSON, Jr. is informed, believes and thereon alleges that his handwriting expert witness will testify to a reasonable degree expert certainty that the pens are different and the signatures are NOT from the same hand to show that the Assistant Vice President, who he or she purported themselves to be at that time, had no clue what minion Lluvia Sanchez purportedly did or did not do, to seemingly comply with a Declaration from a non-existent entity.   Ergo, proffer and adduce evidence for this Honorable Court to see for itself the phenomena known as "robo-signing."   Attached **EXHIBIT 12,** bate stamped document "6343."

45.   Plaintiff MATTHEW ANDERSON, Jr. is informed, believes and thereon alleges that the entity entitled NDEX, LLC the purported post hoc substituted trustee of plaintiff's non-traceable loan/note lodged herein as ***EXHIBIT 2*** and incorporated by this reference is a **ruse and/or artifice that was used to defraud** not only Plaintiff herein, *but all of those persons similarly situated who were harmed by their actions in a like or substantially identical manner.* Attached hereto as **EXHIBIT 13,** is a true and correct copy of their web page

23

LEGAL BALLER™
LAW PARTNERS, RLLP

presence, which is nothing but a one "splash" page presence with no links or anything; not to mention that the phone number listed is now that of a prominent Texas law firm that handles real property and foreclosure cases; namely Barrett, Daffin, Frappier, Turner & Engel, LLP (972)386-5040, and which curiously has the EXACT SAME ADDRESS!

46.     Plaintiff MATTHEW ANDERSON, Jr. further is informed, believes and thereon alleges that there is no distinction between the two entities thereby perpetuating the fraud alleged herein above.     Attached hereto as **EXHIBIT 14,** is a true and correct copy of Rebecca Frank's Linkdin Profile detailing the above law firm "and" National Default Exchange as joint employers.   Attached hereto as **EXHIBIT 15,** is a true and correct copy of Rebecca Frank's e-mail to the undersigned in response to my query if she worked 20 years for "**the firm or NDeX?"**- She stating verbatim, "*I WORKED FOR THE FIRM AND NDeX FOR A TOTAL OF TWENTY YEARS. I STARTED WITH THE FIRM AND WHEN WE CREATED NDeX UNDER THE FIRM UMBRELLA, I BECAME AN NDeX employee. IT'S ALL ONE AND THE SAME COMPANY.*" dated July 29, 2013 at 11:23 a.m.

47.     Plaintiff MATTHEW ANDERSON, Jr. equally is informed, believes and thereon alleges that said entity and law firm are inextricably entwined with the "fallout" known as the "Great Recession" in so far as NDex is an arm of a

Publicly Traded "Media Company" known as the The Dolan Company with a ticker of DM. Attached hereto as **EXHIBIT 16,** is a true and correct copy of Dolan's Press Release dated curiously July 9, 2013 that it had sold its NDeX asset to none other the law firm of "BARRETT, DAFFIN, FRAPPIER, LEVINE & BLOCK, LLP." Plaintiff MATTHEW ANDERSON, Jr., questions why one company that created itself would have to sell itself back to itself processing and being paid for millions and millions of foreclosure defaults and trustee sales throughout the continental United States via a publicly traded media company?

48.   Plaintiff is further informed, believes and thereon alleges that the foregoing "set up" was (1) use the Media Company as a means to "control the information about foreclosures to the public," (2) to use a law firm skilled in the area of real estate to oversee that the purported legal requirements are met through the foreclosure processes, and/or to (3) use the indicia of "companies" to give first blush legitimacy to the public that everything is, well, *copacetic* when in reality it was not.   Thus, plaintiff further alleges on information and believes that the allegations hereto made provide the good faith basis reasonable and necessary to prove and/or tend to prove, to borrow the Bard: "***Something is rotten in the state of Denmark***." Shakespeare's Hamlet, 1603.

49.   Plaintiff MATTHEW ANDERSON, Jr. is duly informed, believes and thereon alleges that defendants KIMBALL, TIREY & ST. JOHN, LLP and its

associate CHRISTINE RELPH, ESQ. had an affirmative duty to investigate, verify and secure such information and documentation that a reasonably prudent law firm and associate attorney with represented "expertise" in the area of real estate, foreclosure, post foreclosure evictions, ad nauseam, to confirm with reasonable certainty that WELLS FARGO was in fact a "person" entitled to enforce the note initially taken out by plaintiff such that it had "standing" to foreclose on plaintiff and to hire said experienced firm and its attorneys to evict the hapless victims, plaintiff herein included.

50.    Plaintiff further is informed, believes and thereon alleges that defendants' failure(s), and each of them, constitutes a violation not only of the law espoused hereinabove under section: **LEGAL FOUNDATION** (A, B, C and D) but also more specifically the provision of the FAIR DEBT COLLECTION PRACTICES ACT which prohibits a debt collector (defendants' herein) from making representations that the debt has been sold to "an innocent purchaser for value." See FDCPA, 15 U.S.C. §§ 1692k et seq., and its progeny. For anyone who practices in this area and doesn't know or is not familiar with the same is fooling no one, except perhaps the Honorable Courts in which we are sworn not to mislead or commit a fraud upon. *Cal.Rul.Pro.Conduct 5-200(B).*

51.    Plaintiff is informed, believes and thereon alleges that the Complaint filed by defendants and their associate, Mdme. RELPH as the one prosecuting it,

against plaintiff MATTHEW ANDERSON, Jr. and all others similarly situated constitutes a fraud or deceptive debt collection practice in violation of the FDCPA and case law interpreting the same and one that is done routinely through the Courts of California such that it shows a wanton and reckless disregard for the legal rights of not only plaintiff MATTHEW ANDERSON, Jr. but all of those similarly situated with him that have a parity of damages and legal consequences that form an integral part of the request for class certification herein plead. Attached hereto as **EXHIBIT 17** is a true and correct copy of the COMPLAINT FOR UNLAWFUL DETAINER, 3 DAY NOTICE TO PAY OR QUIT, etc. entitled Superior Court Case No. 37-2012-00030346- CL-UD-SC. Plaintiff MATTHEW ANDERSON, Jr. also requests this Honorable Court take judicial notice of all proceedings thereinafter conducted by defendants, and each of them, as additional acts perpetrated on plaintiff and all those similarly situation in a continuous, routine and wanton and reckless pattern of deceptive practices in ALL cases where said defendants and each of them failed to confirm in accordance with the law of In Re Veal governing what an entity must show in order to qualify to enforce a note for purposes of effectuating a foreclosure on an individual thereby entitling it to all of the legal rights and procedures consequent to the same.

52.    Plaintiff MATTHEW ANDERSON, Jr. is informed, believes and thereon

1  alleges that such deceptive debt collection practices in violation of the laws

2
3  governing the same permeate a substantial amount of the foreclosures and post-

4  foreclosure evictions that have been filed by defendants, and each of them, and

5  those that continue to be filed as we speak.

6
7
## VII.

8
## FIRST CAUSE OF ACTION OF

9
## PLAINTIFF, MATTHEW ANDERSON Jr., AGAINST DEFENDANTS

10
11
## KIMBALL, TIREY & ST. JOHN, LLP, CHRISTINE RELPH, Esq., and

12
## DOES 1 through 100, Inclusive in Violation of the

13
## FDCPA, 15 U.S.C. § 1692

14
15  53. Plaintiffs hereby incorporate the preceding paragraphs by reference as

16  though fully set forth herein;

17  54. Except for the Defendant debt collectors named in this cause of action

18
19  above, Defendants have concealed the roles of the parties and Plaintiff is unsure

20  who the other "debt collectors" of the loan are.

21
22  55. Federal law, the FDCPA prohibits the use of "any false, deceptive or

23  misleading representation or means in connection with the collection of any

24  debt..."

25  56. In making misrepresentations to the court to aid and abet their clients in

26
27  foreclosing on Plaintiff's home, the Defendants made false, deceptive and

28

LEGAL BALLER™
LAW PARTNERS, RLLP

misleading representation concerning their standing to sue the plaintiffs and their interest in the debt;

57. The Defendants falsely represented the status of the debt, in particular, that it was due and owing to defendants at the time suit was filed;

58. The Defendants falsely represented or implied that the debt was owing to defendants as an innocent purchaser for value, when in fact, such assignment had not been accomplished;

59. The Defendants threatened to take action, namely engaging in collection activities and collection and foreclosure proceedings as trustees that cannot legally be taken by them. And Securitizers discovered that the assignments and proper documents to collect the Subject Loans could not actually be located. To solve the problem of missing assignments, and other documents, new assignments were made and recorded. Most of these Assignments, including those allegedly affecting the notes and mortgage for Plaintiff's residence, contained false statements. The Assignments were prepared by specially selected law firms and companies that specialized in providing "mortgage default services" to banks and mortgage companies and which is the subject of many pending criminal investigations. It is now well established that law firms, including Defendants also "robo-signed" by, inter alia, signing the verifications required in Unlawful Detainer actions and other court documents.

60. Assignments were prepared to conceal that no valid or proper assignments of the promissory notes or trust deeds ever occurred.

61. The foregoing acts and omissions of Defendants constitute violations of the FDCPA, including, but not limited to, 1692c, 1692d, 1692e, 1692f, 1692g, and 1692i.

62. As an actual and proximate result of defendants' and each of their conduct, Plaintiff MATTHEW ANDERSON, Jr. and all those similarly situated with him are entitled to recover equitable relief, statutory damages, actual damages, reasonable attorney's fees, costs and any and all such other damages available under the law and/or which this Honorable Court deems just and proper.

## VIII.

## SECOND CAUSE OF ACTION OF

## PLAINTIFF, MATTHEW ANDERSON Jr., AGAINST DEFENDANTS

## KIMBALL, TIREY & ST. JOHN, LLP, CHRISTINE RELPH, Esq., and

## DOES 1 through 100, Inclusive in VIOLATION OF CALIFORNIA

## ROSENTHAL FAIR DEBT COLLECTION PRACTICES ACT

## ("Rosenthal Act") California Civil Code § 1788, et seq.

63. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained in the above paragraphs of the Complaint herein as though set forth in full.

64. Attorney "Debt collectors" named in this cause of action are subject to the Rosenthal Act.

65. Defendants' actions constitute a violation of California Civil Code § 1788 et seq., also known as the Rosenthal Act, in that they threatened to take actions prohibited by law, including, without limitation: falsely stating the amount of a debt; increasing the amount of a debt by including amounts not permitted by law or contract; improperly foreclosing upon the Subject Residence; and using unfair and unconscionable means in an attempt to collect a debt.

66. Defendants' misconduct has caused Plaintiff to suffer actual damages.

67. As a result of Defendants' misconduct, Plaintiff is entitled to actual damages and statutory damages in an amount to be determined at trial. Moreover, said Defendants' misconduct was willful, malicious, and outrageous, and therefore punitive damages are warranted and demanded.  These remedies under the Rosenthal Act are cumulative under Gonzalez v. Arrow Financial Services, LLC, — F.3d —, 2011 WL 4430844 (9th Cir Sept. 23, 2011).

68. Pursuant to the controlling contractual document(s) and applicable law, Plaintiff is entitled to recover costs and reasonable attorneys' fees.

>>

>>

>>

LEGAL BALLER™
LAW PARTNERS, RLLP

# IX.

## THIRD CAUSE OF ACTION OF

## PLAINTIFF, MATTHEW ANDERSON Jr., AGAINST DEFENDANTS

## KIMBALL, TIREY & ST. JOHN, LLP, CHRISTINE RELPH, Esq., and

## DOES 1 through 100, Inclusive in VIOLATIONS OF

## CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200

69. Plaintiff re-alleges and incorporates herein by reference each and every allegation contained above of the Complaint as though set forth in full.

70. Defendants committed unlawful, unfair and/or fraudulent business practices, as defined by California Business & Professions Code § 17200, by engaging in unlawful, unfair and fraudulent business practices as alleged herein.

71. As a result of Defendants' misconduct, Plaintiff has suffered various damages and injuries according to proof at trial.

72. Plaintiff seeks injunctive relief enjoining Defendants from engaging in unfair business practices described herein.

73. Plaintiff further seeks restitution, disgorgement of sums wrongfully obtained, costs of suit, reasonable attorneys' fees, and such other and further relief as the Court may deem just and proper.

>>

>>

32

LEGAL BALLER™
LAW PARTNERS, RLLP

## X.

## FOURTH CAUSE OF ACTION OF

## PLAINTIFF, MATTHEW ANDERSON Jr., AGAINST DEFENDANTS

## KIMBALL, TIREY & ST. JOHN, LLP, CHRISTINE RELPH, Esq., and

## DOES 1 through 100, Inclusive VIOLATIONS OF

## MISREPRESENTATION & FRAUD for PUNITIVE DAMAGES

74. Defendants represented to Plaintiff and the courts that important facts were true.

75. The facts were not true and Defendants had no reasonable basis for claiming they were true at the time they made them.

76. Defendants intended that Plaintiff rely on the facts.

77. Plaintiff reasonably relied on the facts until discovering they were false.

78. Plaintiff was damaged.

## XI.

## DEMAND FOR JURY TRIAL

79. Plaintiff demands a trial by jury pursuant to his constitutional right under the 7th Amendment to the United States Constitution.

>>

>>

33

LEGAL BALLER©
LAW PARTNERS, RLLP

# XII.

## **PRAYER**

WHEREFORE, Plaintiff prays for judgment and order against Defendants, inclusive, as follows:

1.   Declaratory judgment that defendants' conduct violated the FDCPA and an injunction prohibiting such acts in the future;

2.   An award of compensatory damages;

3.   An award of pre-judgment and post-judgment interest;

4.   Awarding Plaintiff his costs and expenses in this litigation, including reasonable attorneys' fees and expenses pursuant to FDCPA 15 U.S.C. §§ 1692k;

5.   An order awarding Plaintiff and the Class damages and other compensatory relief as the Court deems proper in the maximum amount allowed by law; including but not limited to actual damages, statutory damages pursuant to 15 U.S.C. § 1692k, and disgorgement, and injunctive relief under California's common and statutory law of unfair business practices

6.   Any other further legal and/or equitable relief to which Plaintiff might be entitled at law or which the Court deems proper, according to proof,

7.    Exemplary or punitive damages as may be necessary and appropriate
to punish and deter any reprehensible or intentional misconduct.


Venerably submitted,

**LEGAL BALLER[SM] LAW PARTNERS, RLLP**


By: Raymundo Pacello, Jr., Esq.

Attorney for Plaintiff, MATTHEW ANDERSON, Jr.

Email: lb@legalballer.com

LEGAL BALLER[SM]
LAW PARTNERS, RLLP

Class Action Complaint – 3:13-CV-253-JM