UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MATTHEW ANDERSON, individually and on behalf of others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>KIMBALL, TIREY & ST. JOHN LLP, and CHRISTINE RELPH,<br><br>    Defendants. | Case No.: 3:13-CV-253-JM (NLS)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS WITH PREJUDICE** |

On January 13, 2013, Plaintiff Matthew Anderson filed a class action complaint against Kimball, Tirey & St. John LLP ("KTSJ"), a law firm, and Christine Relph, a KTSJ associate attorney, (together, "Defendants") alleging four claims related to Defendants' allegedly unfair debt collection practices. On April 5, 2013 and again on July 9, 2013, the court granted Defendants' motions to dismiss with leave to amend. On August 5, 2013, Plaintiff filed a second amended class action complaint ("SAC") against Defendants. On August 12, 2013, Defendants moved to dismiss the SAC pursuant to Rule 12(b)(6). For the following reasons, the court GRANTS Defendants' motion to dismiss with prejudice.

**I. BACKGROUND**

Plaintiff Matthew Anderson is an individual residing in San Diego, California. SAC ¶ 3. On March 27, 2007, he secured an Adjustable Rate Mortgage with a principal balance of $450,000 from World Savings Bank to purchase a home located at 4001 Shadow Rock Court, Bonita, CA 91902-3039. Id. ¶. As evidence of the loan, Anderson has provided the court with a Deed of Trust to the aforementioned house. Id. Exh. 2.

As in the initial and first amended complaints, Anderson claims that his loan was improperly assigned through a practice called "robo-signing," rendering the foreclosure of his home and other homes allegedly invalid. Anderson alleges that Defendants knew "of the non-traceability of the legal holder of the note(s) used to foreclosure [sic] and thereby knew or should have known that each and every purported [plaintiff in a mortgage foreclosure action] had no legal standing to foreclosure [sic] thereby depriving [prospective plaintiffs, such as Anderson], with the legal right to evict and take possession of the properties because, inter alia, said plaintiff could not show standing." Id. ¶ 18.

After providing a brief history of the financial crisis and the merger of Wells Fargo and Wachovia, Anderson explains that the original trustee for his loan was improper. Id. ¶ 42. Anderson also alleges that the two different pen thicknesses appear on the "Declaration of Wachovia," a document informing Anderson that he was in default is evidence, indicating that two people signed the document, though he does not explain the significance of the document. Id. ¶ 44 and Exh. 12. He further "is informed, believes or thereon alleges that his handwriting expert witness will testify to a reasonable degree of expert certainty that the pens are different and the signatures are NOT from the same hand to show

that the Assistant Vice President, who he or she purported themselves to be at the time, had no clue what minion Lluvia Sanchez purportedly did or did not do, to seemingly comply with a Declaration from a non-existent entity." Id.  Anderson concludes that this alleged practice constitutes robo-signing. Id.

Next, Anderson alleges that the title company, NDEX, LLC, substituted the trustee of his non-traceable loan/note with the intent to defraud him. Id. ¶ 45.  He further claims that NDEX, LLC is related to a Texas law firm named Barrett, Daffin, Frappier, Turner & Engle LLP that handles real property and foreclosure cases because they are located at the same address. Id. ¶ 45. Even if true, the basis for Anderson's belief that a fraud targeting him was perpetuated by one of these entities is unclear from the complaint. Id. ¶ 45.

After Wells Fargo foreclosed his home, Anderson claims that he was evicted from his home with the help of KTSJ. Id. ¶ 10.  Anderson claims that the foreclosure and Defendants' subsequent eviction were improper because Defendants acted under an invalid assignment of the Note or DOT. Id. ¶ 34. Notably, however, Anderson never alleges that he had kept up with the payments on his loan.

Anderson alleges that KTSJ and its associate, Relph, "had an affirmative duty to investigate, verify and secure such information and documentation that a reasonably prudent law firm and associate attorney with represented 'expertise' in the area of real estate, foreclosure, post foreclosure [sic] evictions, ad nauseam, to confirm with reasonable certainty that WELLS FARGO was in fact a 'person' entitled to enforce the note initially taken out by plaintiff such that it had 'standing' to foreclose on plaintiff and to hire said experienced firm and its attorneys to evict the hapless victims, plaintiff herein included." Id. ¶ 50.

Anderson has asserted one federal law claim: violation of the Fair Debt Collection Practices Act ("FDCPA").  Anderson has also alleged three state law claims: (1) violation of the Rosenthal Act (Cal. Civ. Code § 1788), (2) violation of California Business & Professions Code § 17200 for unfair and/or fraudulent business practices, and (3) negligent misrepresentation.  Defendants filed a motion to dismiss all of Anderson's claims.

**II. LEGAL STANDARD**

To overcome a Rule 12(b)(6) motion, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  In evaluating the motion, the court must construe the pleadings in the light most favorable to the non-moving party, accepting as true all material allegations in the complaint and any reasonable inferences drawn therefrom.  See, e.g., Broam v. Bogan, 320 F.3d 1023, 1028 (9th Cir. 2003). The court should grant Rule 12(b)(6) relief only if the complaint lacks either a "cognizable legal theory" or facts sufficient to support a cognizable legal theory.  See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). A facial challenge to a law does not require further facts to be developed because it only constitutes a question of law. See Fortuna Enters. L.P. v. Los Angeles, 673 F. Supp. 2d 1000, 1003 (C.D. Cal. 2008).

However, allegations of fraud must meet Rule 9(b)'s heightened pleading standards, which requires allegations pertaining to "the who, what, when, where, and how" of the misconduct charged. See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003).  When there are multiple defendants, "a plaintiff must, at a minimum, 'identif[y] the role of [each] defendant[] in the alleged

fraudulent scheme.'" Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007) (citations omitted).

## III. DISCUSSION

### A. Fair Debt Collection Practices Act Claim

As explained in past orders, FDCPA was passed to prevent abusive debt collection practices, including the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Under the FDCPA, debt collectors are prohibited from engaging in certain inappropriate communications with consumers, harassing or abusing consumers, or engaging in other unfair practices, such as collecting fees not specified in the agreement creating the debt. See 15 U.S.C. §§ 1692c, 1692d, and 1692f. The FDCPA defines debt collectors as those who collect or attempt to collect a debt owed to another entity, although the definition carves out several exceptions to the definition. See 15 U.S.C. § 1692a. And as discussed in the court's previous orders granting Defendants' motion to dismiss, the court agrees that KTSJ and Relph meet the FDCPA's definition of debt collector. See Heintz v. Jenkins, 514 U.S. 291, 299 (1995) (holding that the FDCPA "applies to attorneys who regularly engage in consumer-debt-collection activity, even when that activity consists of litigation").

However, the court again finds that Anderson has not adequately plead a violation of the FDCPA by either KTSJ or Relph because he has not asserted any facts establishing that the Defendants used "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Anderson's allegations attack the validity of the underlying foreclosure, claiming that the note was improperly assigned. However, Anderson's allegations

fail to allege any inappropriate debt collection practices by KTSJ or Relph. This failure to detail any unfair or fraudulent practices by KTSJ or Relph is fatal to Plaintiff's claim because non-judicial foreclosures are "presumed to have been conducted regularly, and the burden of proof rests with the party attempting to rebut this presumption." Fontenot v. Wells Fargo Bank, N.A., 198 Cal. App. 4th 256, 271 (2011) (citing Moeller v. Lien, 25 Cal.App.4th 822, 830 (1994)). In other words, KTSJ and Relph were correctly entitled to presume that the foreclosure of Anderson's home was proper and failure to further analyze the foreclosure cannot alone constitute the basis for a claim under the FDCPA. Defendants were not, as Anderson contends, ignoring the law; they were properly relying on it.

The cases cited by Anderson are inapplicable here. For example, in Alicea v. GE Money Bank, 2009 WL 2136969 (N.D. Cal. 2009), the court granted the defendants' motion to dismiss plaintiff's claim alleging fraudulent debt practices on all counts. Similarly, in Marques v. Federal Home Loan Mortgage Corporation, 2012 U.S. Dist. LEXIS 173988 (S.D. Cal. 2012), the court dismissed the plaintiff's FDCPA claim against the Federal Home Loan Mortgage Corporation because it did not count as a debt collector, but does not engage in further instructive analysis. The FDCPA claims in In re MERS Litigation, 2011 U.S. Dist. LEXIS 117107 (D. Ariz. 2011), and Silving v. Wells Fargo Bank NA, 2012 U.S. Dist. Lexis 5287 (D. Ariz. 2012), both were dismissed for failing to state a claim and took place in Arizona, where applicable state foreclosure law differs. Without additional allegations of accompanying fraud or deceptive acts or inappropriate debt collection practices to bring the action under the scope of the FDCPA, this challenge amounts to nothing more than a challenge of the Note's

assignment. Such challenges of assignment belong in state court, not federal court.

Anderson also lacks standing because he has again failed to allege "a 'concrete and particularized injury that is fairly traceable to the challenged assignment.'" Silving v. Wells Fargo Bank, NA., 2012 U.S. Dist. LEXIS 5287, at *3 (D. Ariz. Jan. 18, 2012) (quoting In re MERS Litig., 2011 U.S. Dist. LEXIS 117101 (D. Ariz. 2011)); see also Marques v. Fed. Home Loan Mortg. Corp., 2012 U.S. Dist. LEXIS 173988, at *12-13 (S.D. Cal. Dec. 6, 2012) (concluding that plaintiff lacked standing to challenge the foreclosure of their property based on the validity of the assignment because it only affected to whom the borrower was obliged); Fontenot, 198 Cal. App. at 271 ("[A] plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests."). Nor does a plaintiff "have standing to challenge the securitization of his loan because he is not a party to the [agreement securitizing the loans]." Halajian v. Deutsche Bank Nat'l Trust Co., 2013 U.S. Dist. LEXIS 20341, at *21-22 (citing Junger v. Bank of Am., NA., 2012 U.S. Dist. LEXIS 23917, at *3 (C.D. Cal. 2012)).

The assignment and securitization of Anderson's loan affects whether Anderson owed money due to his failure to fulfill his payment obligations under the terms of the loan; they only affected whom he was obligated to pay. See Fontenot v. Wells Fargo Bank, N.A., 198 Cal. App. 4th at 272 ("As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. Plaintiff effectively concedes she was in default, and she does not allege that the transfer . . . interfered in any manner with her payment

of the note."). Anderson's FDCPA claim is therefore dismissed for failing to validly plead a claim or assert standing.

**B. State Law Claims**

As no federal claims remain, the court has discretion to dismiss or retain Anderson's remaining state law claims under 28 U.S.C. § 1367(c)(3). See Lacey v. Maricopa Cnty., 649 F.3d 1118, 1137 (9th Cir.2011); Schneider v. TRW, Inc., 938 F.2d 986 (9th Cir. 1991). The court should consider judicial economy, convenience, fairness, and comity, and these considerations usually "will point toward declining to exercise jurisdiction over the remaining state-law claims." Sanford v. MemberWorks, Inc., 625 F.3d 550, 561 (9th Cir. 2010); see also Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean Geological Formation, 524 F.3d 1090, 1100 (9th Cir. 2008) (holding that a district court may decline to exercise supplemental jurisdiction over a claim if it has dismissed all claims over which it had original jurisdiction). But here, no substantial factors favor retaining jurisdiction, and comity concerns dictate that these claims should be heard in state court. The court therefore declines to address the remaining three state law claims.

**IV. CONCLUSION**

As there appear to be no further allegations that may be advanced to cure to

///

///

1 the fatal defects now set forth in three orders, the motion to dismiss is GRANTED
2 without leave to amend.  The clerk of court is instructed to close this matter.
3     **IT IS SO ORDERED.**
4 DATED:  September 16, 2013

Jeffrey T. Miller
United States District Judge